IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02810-MSK-CBS

RICARDO ROSADO,
        Applicant,
v.

ANGEL MEDINA, Warden, L.C.F., and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,
        Respondents.

_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

        This civil action comes before the court on Mr. Rosado's "Application for a Writ of

Habeas Corpus Pursuant to 28 U.S.C. § 2254" (Petition), filed *pro se* on October 27, 2011

(Doc. # 1).  Pursuant to the Order of Reference dated February 7, 2012 (Doc.

# 16), this case was referred to the Magistrate Judge to "issue a Report and

Recommendation as to the disposition of the merits of the Petition."  The court has reviewed

the Petition, Respondent's "Answer to Application for Writ of Habeas Corpus" ("Answer")

(filed April 30, 2012) (Doc. # 25), Mr. Rosado's "Traverse" (filed June 25, 2012) (Doc. # 29),

the pertinent parts of the state court record, the entire case file, and the applicable law and is

sufficiently advised in the premises. The court recommends that the Petition be denied and

that this civil action be dismissed with prejudice.


I.  Statement of the Case

        On or about July 21, 2006, Mr. Rosado was convicted in El Paso County District Court

case number 04CR925 on a jury verdict finding him guilty of two counts of aggravated

robbery; one count of conspiracy to commit aggravated robbery and theft; one count of

conspiracy to commit aggravated robbery; two counts of theft–$15,000 or more; fifteen

counts of menacing; and, four crime of violence counts.  (*See* State Court R. 7/21/06 Trial

Tr.).

The following is a summary of the evidence at Mr. Rosado's trial taken from the

Colorado Court of Appeals' decision on direct appeal of his convictions:

> In September and October 2003, [Mr. Rosado] committed armed
> robberies of a credit union and a bank, respectively.  During both robberies,
> [Mr. Rosado] was aided and abetted by two accomplices–Kevin Wilson and
> Juan Alcala in the first robbery, and Kevin Wilson and Edwin Morales in the
> second robbery.  All of the robbers were armed with guns, and all of the
> robbers wore dark clothing and covered their faced to avoid being identified.
> Wilson told his wife and girlfriend about the robberies.  Wilson and his girlfriend
> had a falling out, and the former girlfriend told the police about Wilson's
> involvement in the robberies.  Wilson subsequently implicated [Mr. Rosado] and
> the other two accomplices.

*People v. Rosado*, 06CA2290 (Colo. App. July 17, 2008) (not published) (*See* Ex. C to

Respondents' Pre-Answer Response, Doc. # 10-4).  On September 25, 2006, Mr. Rosado

was sentenced to the following prison terms in the Colorado Department of Corrections:

twelve years on each aggravated robbery conviction; five years on each conspiracy

conviction; six years on each theft conviction; and three years on each of the menacing

convictions.  The state trial court ordered the sentences on the aggravated robbery and

conspiracy convictions to run consecutively, with the  remaining counts to run concurrently.

(State Court R. 9/25/06 Sentencing Tr., at pp. 26-29).

Mr. Rosado's convictions were affirmed on direct appeal. (Doc. # 10-4).  On October

14, 2008, the Colorado Supreme Court denied certiorari review. (*See* Exhibit D to Pre-

Answer Response, Doc. # 10-5).  The Colorado Court of Appeals issued the mandate on

November 3, 2008. (Exhibit A to  Pre-Answer Response (register of actions) Doc. # 10-1, at

p. 6 of 19).

On January 21, 2009, Mr. Rosado filed *pro se* a motion for sentence reconsideration pursuant to Colorado Rule of Criminal Procedure 35(b).  (*See id.*). The trial court denied the motion on February 4, 2009.  (*Id.*).  Mr. Rosado did not appeal.

On March 26, 2009, Mr. Rosado filed *pro se* a motion for post-conviction relief pursuant to Colo. R. Crim. P. 35(c), alleging ineffective assistance of trial counsel.  (*Id.*).  The Colorado Court of Appeals affirmed the trial court's order denying the motion in *People v. Rosado*, 10CA1568 (Colo. App. July 7, 2011) (not published) (Exhibit F to Pre-Answer Response, Doc. # 10-7).  The mandate issued on September 5, 2011.  (*Id.*, Ex. G).

On October 27, 2011, Mr. Rosado filed the instant Petition with the Court.  He asserts four claims for relief.  First, he claims that the prosecution violated his due process rights by failing to timely disclose: (1) statements by a witness (M.G.) that one of the robbers said to "kill them all"; (2) written plea agreements of his accomplices; and (3) handwritten statements by witnesses given to the police following the robbery.  Mr. Rosado also asserts in claim one that the trial court erred in failing to impose sanctions for these untimely disclosures.  For his second claim, Applicant contends that the prosecutor engaged in misconduct by eliciting inadmissible and prejudicial similar transaction evidence of a third uncharged robbery.  In claim three, Mr. Rosado maintains that there was insufficient evidence to support the menacing conviction against victim C.Z. because she did not testify that she was afraid during the robbery.  Finally, Mr. Rosado asserts in his fourth claim that trial counsel was ineffective in failing to investigate the co-defendants' plea agreements and in failing to request a continuance once the plea agreements were provided to counsel on the first day of trial.

II.  One–Year Limitation Period for Filing Application for Federal Habeas Relief

Respondents do not challenge the timeliness of the Petition under the one-year

limitation period set forth in 28 U.S.C. § 2244(d)(1). (*See* Pre-Answer Response, Doc.

# 10, at p. 7 of 10).


III.  Exhaustion of State Remedies and Procedural Default

"A threshold question that must be addressed in every habeas case is that of

exhaustion." *Harris v. Champion*, 15 F.3d 1538, 1554 (10th Cir. 1994). Before a state

prisoner may raise a federal constitutional claim attacking his state conviction in a federal

habeas corpus proceeding pursuant to 28 U.S.C. § 2254, he or she must have first

exhausted state remedies and provided the state courts with a fair opportunity to apply

controlling legal principles to facts bearing on the constitutional claims. 28 U.S.C. §

2254(b)(1).  Respondents represent affirmatively that Mr. Rosado raised his habeas claims

as federal constitutional claims in the state courts and, therefore, his claims are  exhausted.

(Doc. # 10, at p. 8 of 10).


IV. Standard of Review

Mr. Rosado filed this habeas proceeding after the April 24, 1996 effective date of the

Antiterrorism and Effective Death Penalty Act ("AEDPA"). Consequently, federal review of the

Petition is governed by the standards set out in 28 U.S.C. § 2254(d), as amended by the

AEDPA. *See Price v. Vincent*, 538 U.S. 634, 638 (2003) ("A habeas petitioner whose claim

was adjudicated on the merits in state court is not entitled to relief in federal court unless he

meets the requirements of 28 U.S.C. § 2254(d)."). Section 2254(d) provides that a writ of

habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. 2254(d). The Supreme Court has construed the language of § 2254(d)(1):

> . . . a decision by a state court is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent. . . ."

*Price*, 538 U.S. at 640.

In determining whether the state court decision "involved an unreasonable application of clearly established Federal law" under § 2254(d)(1),

> a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner.

*Price*, 538 U.S. at 640–41 (internal quotation marks and citations omitted); *see also Harrington v. Richter*, 131 S.Ct. 770, 786-87 (2011) (to prevail in a petition for habeas corpus relief, a state prisoner must show "that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The Supreme Court has interpreted § 2254(d)(2) to mean that "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller–El v. Cockerell*, 537 U.S. 322, 340 (2003). When applying §

2254(d)(2), "the factual issues decided by the [state] court are presumed to be correct and [Mr. Rosado] bears the burden of rebutting this presumption by clear and convincing evidence." *Le v. Mullin*, 311 F.3d 1002, 1010 (10th Cir. 2002) (citing 28 U.S.C. § 2254(e)(1)). *See also Foster v. Johnson*, 293 F.3d 766, 776–77 (5th Cir. 2002) ("To establish that habeas relief is warranted on the § 2254(d)(2) ground . . . a petitioner must rebut by clear and convincing evidence the § 2254(e)(1) presumption that a state court's factual findings are correct.") (citations omitted).

V.   Analysis

A.   Claim One

In his first claim, Mr. Rosado asserts that the prosecution violated his due process rights by failing to timely disclose: (a) statements by a witness (M.G.) that one of the robbers said to "kill them all"; (b) written plea agreements of his accomplices; and, (c) handwritten statements by witnesses given to the police following the robbery.  He further argues that the trial court erred in failing to impose sanctions for these untimely disclosures.

An accused's due process rights are violated when the prosecution suppresses material evidence that was favorable to the accused as exculpatory or impeachment evidence.  See *Strickler  v. Greene,* 527 U.S. 263, 281-82 (1999); *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  Evidence is material if there is a reasonable probability that, "had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *United States v. Bagley*, 473 U.S. 667, 682 (1985).  In a late disclosure case, the materiality question is whether there is a reasonable probability that the outcome of the trial would have been different had the State disclosed the information earlier.  *See Knight v. Mullin*, 293 F.3d 1165, 1172-73 (10th Cir. 2002).

6

Under *California v. Trombetta*, 467 U.S. 479, 489 (1984), the State may not destroy

evidence with "an exculpatory value that was apparent before it was destroyed" where the

evidence might not be available to the defendant through other means.  However, the State's

failure to preserve potentially exculpatory evidence violates the Constitution only if law

enforcement authorities acted in bad faith.  *See Arizona v. Youngblood*, 488 U.S. 51, 57-58

(1988).

On direct appeal, the Colorado Court of Appeals reviewed Mr. Rosado's allegations as

state law discovery violations (Doc. # 10-4, at p. 5 of 16), and did not address his assertion

that his federal due process right to a fair trial was violated.[1]  Thus, this court must make "its

own determination in the first instance" of Mr. Rosado's federal due process claim.  *Smith v.*

*Workman*, 550 F.3d 1258, 1264 (10th Cir. 2008) (citation omitted); *see also Wilson v.*

*Workman*, 577 F.3d 1284, 1296 (10th Cir. 2009) ("While AEDPA . . . requires federal habeas

courts to presume the correctness of state courts' factual findings unless applicants rebut this

presumption with clear and convincing evidence, that principle . . . does not suggest that

such deference is applicable when the state court has failed to consider the full merits of the

claim.") (internal quotation marks and citation omitted);  *Neill v. Gibson*, 278 F.3d 1044, 1053

(10th Cir. 2001) (where the state appellate court denies relief solely on state law grounds, the

---

[1]The Colorado Court of Appeals' failure to acknowledge a federal due process claim is not surprising given that Applicant did not support his assertions with citation to any federal law.  It is questionable whether Applicant fairly presented a due process claim to the state appellate court.  However, the Respondents have affirmatively represented in the Pre-Answer Response that Mr. Rosado exhausted state remedies for his claim, *see* Doc. # 10, at p. 8 of 10, and have therefore waived the defense of failure to exhaust state remedies.  *See Gonzales v. McKune,* 279 F.3d 922, 926 & n. 8 (10th Cir.2002) (en banc) (holding that a state "expressly waived" the exhaustion requirement when its answer to the habeas application "admitted that petitioner has properly exhausted the issues now presented to this Court.") (brackets and internal quotation marks omitted); *see also* 28 U.S.C. § 2254(b)(3) (State may waive the exhaustion requirement, but only if "the State, through counsel, expressly waives the requirement.").

court reviews the constitutional claim *de novo*); *Ellis v. Mullin*, 326 F.3d 1122, 1128 (10th Cir. 2002) (same).

        *1.  witness M.G.'s statement that a robber said to "kill them all"*

Mr. Rosado contends that the prosecution violated his due process rights by failing to timely disclose statements by a witness (M.G.) that one of the robbers said to "kill them all." Applicant states in his Traverse that he is withdrawing this claim.  (Doc. # 29, at p. 5 of 14).  In any event, the Court finds that the claim fails on the merits for the reasons discussed below.

During an interview with the prosecutor on June 23, 2006, witness M.G. told the prosecutor that as the robbers were leaving the bank, one of them said "kill them all." (State Court R. 7/13/06 Trial Tr., at pp. 131-32).  Defense counsel received a written report of the interview from the prosecution on June 26, 2006.  (*Id.*)  On the first day of trial, July 11, 2006, defense counsel moved to exclude the statement on the sole ground that it was hearsay that could not be attributed to a particular robber.  (State Court R. 7/11/06 Trial Tr. at pp. 14-16). The court reserved ruling until M.G. testified.  (*Id.* at p. 16).  During M.G.'s testimony, the court conducted a hearing outside the jury's presence, at which the parties again argued the admissibility of the statement.  (*Id.*). The court ruled that the statement was not hearsay, and that M.G. would therefore be permitted to tell the jury what he heard.  (State Court R. 7/13/06 Trial Tr., at pp. 138-39).

On direct appeal, Mr. Rosado did not challenge the trial court's ruling that M.G.'s statement was admissible non-hearsay.  Instead, he asserted that the prosecution did not timely disclose the statement, and therefore, the court should have excluded it.  (Ex.  B-2 to Pre-Answer Response (Doc. # 10-3), at pp. 9-11 of 22).  The Colorado Court of Appeals

determined that the prosecution timely disclosed the statement to defense counsel six days after M.G. made it.  (Doc. # 10-4, at p. 7 of 16).   The state appellate court further found:

> [Mr. Rosado] has not articulated any prejudice arising from the timing of the statement's disclosure.  It was provided to [Mr. Rosado's] counsel almost two weeks before trial, and the record does not show that this was an insufficient amount of time for defendant's counsel to assess the admissibility and impact of the statement and tailor his trial strategy to deal with it.

(*Id.*).  Even though the state appellate court's factual findings on the issue of prejudice are not presumed correct under a *de novo* standard of review, those findings are well-supported by the state court record.  Mr. Rosado fails to explain how the result of his trial would have been different if he had received M.G.'s statement more than two weeks before trial.  The court therefore finds that Mr. Rosado has not shown any prejudice resulting from the timing of the disclosure.  Further, if the AEDPA deferential standard of review applies, the state appellate court's determination comported with applicable Supreme Court law.  Accordingly, Mr. Rosado is not entitled to federal habeas relief for claim 1(a).

### 2.  failure to timely disclose written plea agreements

Mr. Rosado next claims that the prosecution violated his due process rights by failing to timely disclose his accomplices' written plea agreements.

On the first day of trial, before the trial began, defense counsel objected that the prosecution had not produced the written plea agreements of the three co-defendants,  all of whom the prosecution intended to call as witnesses at trial.  (State Court R. 7/11/06 Trial Tr., at pp. 25-26).  The trial court found that the prosecution should have disclosed the written plea agreements sooner, but that the prosecution had not wilfully violated its discovery obligations.  (*Id.* at pp. 34-35).  The court ordered the prosecution to produce those documents, along with the co-defendants' presentence reports, to defense counsel that

afternoon, and the prosecution did so before 1:30 p.m.  (*Id.* at p. 39, 42).  The court also

continued the trial until the following morning to allow defense counsel time to review the plea

agreements. (*Id.*).

On direct appeal, the state appellate court found that Mr. Rosado was not prejudiced

by the late disclosure.  The court stated:

> [Mr. Rosado's] counsel did not refute the prosecutor's assertion that the fact the
> other robbers had entered into plea agreement requiring them to testify
> truthfully at [Mr. Rosado's] trial had been made known to the defense some
> time well before trial.  As the district court observed, the plea agreements
> themselves are "not terribly complex," and therefore could be reviewed quickly
> by [Mr. Rosado's] counsel, in sufficient time to permit counsel to prepare any
> additional cross-examination.  The prosecutor did not call these witnesses on
> the first day of the trial, as had been planned, but waited until after the
> intervening weekend to call them, thereby giving [Mr. Rosado's] counsel
> additional time to prepare for their testimony.  Accordingly, we conclude the
> court's remedy of a short continuance was not an abuse of discretion.

(Doc. # 10-4, at pp. 8-9 of 16).

Again, although the state appellate court's findings are not entitled to deference they

are fully supported by the state court record.  Counsel had five days, which included a

weekend, to prepare his cross examination of the co-defendants before they were called as

witnesses at Mr. Rosado's trial.  (State Court R. 7/17/06 Trial Tr.).  Counsel thoroughly cross-

examined the co-defendants about their participation in the robberies and the terms of their

plea agreements, including the more favorable sentences they received as a result of their

cooperation with the government.  (*See generally* State Court R. 7/17/06 Trial Tr. at 27-86;

118-149; 7/18/06 Trial Tr., at 20-64).  Mr. Rosado has not demonstrated any prejudice

resulting from the late disclosure of the accomplices' plea agreements.  Further, if the

AEDPA deferential standard of review applies, the state appellate court's determination

comported with applicable Supreme Court law.  Mr. Rosado cannot prevail on his request for

federal habeas relief in claim 1(b).

3.     *failure to disclose written witness statements*

Mr. Rosado asserts in claim 1(c) that the prosecution violated his due process rights by failing to timely disclose handwritten statements by witnesses given to the police following the robbery.

During trial, defense counsel moved to strike several witnesses' testimony on the ground that the prosecution failed to produce prior to trial handwritten statements about the robberies that the witnesses had provided to law enforcement.  (State Court R. 7/13/06 Trial Tr., at pp. 158-162).  Counsel argued that Mr. Rosado's right of confrontation was compromised by the failure to disclose the statements.  (*Id.*) The prosecution responded that the handwritten statements were not in the District Attorney's possession and that the prosecution had made every effort to locate the statements from local and federal law enforcement authorities, but to no avail.  (*Id.*)  The trial court found that there was no intentional misconduct by the prosecution in failing to produce the witness statements.  (*Id.* at p. 162).  The court refused to strike the witnesses, concluding that the possibility the statements would contain any information exonerating Mr. Rosado "is probably pretty remote."  (*Id.*).

On direct appeal, Mr. Rosado contended that the statements would have enabled him to more effectively contest the issue of the robbers' identities, in support of his defense of general denial.  (Doc. # 10-3, at pp. 8-9 of 22).  The Colorado Court of Appeals rejected this assertion on the following grounds:

> All of the bank's customers/witnesses testified that the robbers all wore dark clothes and covered their faces.  That testimony was supported by surveillance videos, which were admitted into evidence.  Accordingly, none of those witnesses could identify any of the robbers at any time.  (The identification evidence came from defendant's accomplices and Wilson's wife.)  The possibility that any of these witnesses provided law enforcement officers with a description of the robbers that would have tended to rule out [Mr.

Rosado] is, as the district court reasoned, remote.  Therefore, [Mr. Rosado] has
not demonstrated that he suffered any prejudice.

(Doc. # 10-4, at p. 10, of 16).

Again, the state appellate court's factual are squarely supported by the state court

record.  It is not known what information was contained in the witnesses' statements.

However, all of the bank employees and customers testified that they could not identify the

robbers because of the facial masks the robbers wore.  Because the evidence possessed at

most a potential exculpatory value, and there is nothing in the state court record to suggest

that law enforcement authorities acted in bad faith in losing or destroying the statements, the

prosecution's failure to preserve the witnesses' statements did not violate the Fourteenth

Amendment Due Process Clause.  *See Youngblood*, 488 U.S. at 57-58;  *Snow v. Sirmons*,

474 F.3d 693, 716 (10th Cir. 2007) ("Supreme Court authority makes clear that when dealing

with lost or destroyed evidence, 'unless a criminal defendant can show bad faith on the part

of the police, failure to preserve potentially useful evidence does not constitute a denial of

due process of law,'") (emphasis omitted) (quoting *Youngblood*, 488 U.S. at 58).  Further, if

the AEDPA deferential standard of review applies, the state appellate court's determination

was not contrary to or an unreasonable application of United States Supreme Court law.   Mr.

Rosado is not entitled to federal habeas relief for claim 1(c).

B.  Claim Two

In claim two, Mr. Rosado asserts that the prosecutor engaged in misconduct by

eliciting inadmissible and prejudicial similar transaction evidence of a third uncharged

robbery.

Prior to trial, the prosecution filed a notice of its intent to present evidence that Mr. Rosado had participated in another armed robbery of the credit union in December 2003. (State Court R., Court File, at pp. 62-63)  The prosecution later withdrew its request to present the similar transaction evidence.  (*Id.*, 5/31/06 Hrg. Tr.).

At trial, the People called as a witness co-defendant Wilson's wife, who had pleaded guilty to aiding and abetting the robberies.  On redirect examination, the following exchange occurred:

Q.  Did Kevin tell you he had robbed those banks?

A.  Yes.

Q.  Did he tell you who robbed the banks with him?

A.  Yes.

Q.  Did he tell you that the defendant in this case . . . was one of the men?

A.  Yes.

Q.  When did he tell you that?

A.  December of '03.

Q.  How many of the robberies did he say the defendant . . . was involved in?

A.  Three.

Q.  Of the two robberies that we're talking about.

A.  Both.

Q.  Both of them?

(State Court R. 7/18/06 Trial Tr., at p. 144).  Mr. Rosado's counsel objected and the trial court held a bench conference.  Counsel moved for a mistrial on the ground that the prosecutor's question was intended to elicit the answer "three."  (*Id.* at 145).  The court denied the request for a mistrial, finding that the question was not designed to evoke the

13

response "three" and it was "just as logical he was expecting her to say two." (*Id.* at pp. 146,

148).  At defense counsel's request, the court instructed the jury to ignore the last two

questions and answers.  (*Id.* at pp. 148-49).

On direct appeal, the Colorado Court of Appeals concluded that the trial court did not

abuse its discretion in denying the motion for a mistrial, based on the following reasoning:

> [T]he record supports the district court's conclusions that the prosecutor did not
> deliberately elicit an improper response from the witness and that the prejudice
> to [Mr. Rosado] was not so substantial as to warrant a mistrial.  The fact of a
> "third" robbery was mentioned only once, and the prosecutor immediately
> refocused the witness on the two robberies charged.  The court properly
> instructed the jurors to disregard the witness's response, and we presume that
> they heeded that instruction.  Under the circumstances, the court's choice of
> remedy was not an abuse of discretion.

(Docket #10-4, at pp. 13-14 of 16) (citations omitted).

The state appellate court reviewed Mr. Rosado's claim as a state law question and did

not address his prosecutorial misconduct claim under federal due process standards.

Accordingly, the court reviews the claim *de novo.  See Neill*, 278 F.3d at 1053 (because state

Court of Criminal Appeals denied relief solely on state law grounds, court reviews

constitutional claim *de novo*);  *Ellis*, 326 F.3d at 1128 (because state Court of Criminal

Appeals did not consider federal constitutional claim, review is *de novo*).

"Where prosecutorial misconduct does not implicate a specific constitutional right,

improper remarks require reversal of a state conviction only if the remarks 'so infected the

trial with unfairness as to make the resulting conviction a denial of due process.'" *Bland v.*

*Sirmons*, 459 F.3d 999, 1024 (10th Cir. 2006) (quoting *Donnelly v. DeChristoforo*, 416 U.S.

637, 643 (1974)); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  To determine

whether a trial is rendered fundamentally unfair, the federal habeas court examines the entire

proceeding, "including the strength of the evidence against the petitioner, both as to guilt at

that stage of the trial and as to moral culpability at the sentencing phase" as well as "[a]ny cautionary steps-such as instructions to the jury-offered by the court to counteract improper remarks." *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002).  The ultimate question is whether the jury was able to fairly judge the evidence in light of the prosecutors' conduct**.** *Bland*, 459 F.3d at 1024.

Here, the trial court instructed the jury to disregard the question and answer without explanation and no further questions on the subject were asked.  Moreover, the government's case against Mr. Rosado was strong in that all three co-defendants implicated him in the two robberies charged.  The court finds that the witness' improper response to the prosecutor's question did not render Mr. Rosado's trial fundamentally unfair.  Further, if the AEDPA deferential standard of review applies, the state appellate court's determination did not run afoul of applicable Supreme Court law.  Accordingly, Mr. Rosado is not entitled to federal habeas relief for his second claim.

## C.  Claim Three

In claim three, Mr. Rosado maintains that the evidence was insufficient to convict him of menacing victim C.Z. because she did not testify at trial that she was afraid of him.  Mr. Rosado states in his Traverse that he is withdrawing this claim.  (Doc. # 29, at p. 10 of 14). In any event, the court finds that the claim fails on the merits for the reasons discussed below.

The prosecution charged Mr. Rosado in count seven of the Information with menacing victim C.Z. in the Harrison District 2 Federal Credit Union on September 29, 2003.  (State Court R., Court File, at p. 12).  C.Z. did not testify at Mr. Rosado's trial.  At the conclusion of the prosecution's case-in-chief, Mr. Rosado moved for a judgment of acquittal as to count

seven on the ground that the evidence failed to establish that victim C.Z. was afraid that she was in danger of suffering imminent serious bodily injury.  (State Trial Court R., 7/20/06 Trial Tr., at p. 21).  The trial court denied the motion.  (*Id.* at pp. 23-24).

On direct appeal, the Colorado Court of Appeals found sufficient evidence to sustain the menacing conviction based on the following:

> Several witnesses testified as to the robbers' actions while robbing the credit union.  Defendant was armed with and brandished a handgun.  He participated in making sure all the customers and employees remained on the floor during the robbery.  A photograph of C.Z. reenacting how she was forced to stay on the floor on her hands and knees was admitted into evidence.  One witness testified that C.Z. seemed "scared" and "shocked" immediately after the robbery.  Though C.Z. did not testify, her testimony was not essential in light of the other evidence of defendant's guilt.

(Doc. # 10-4, at pp. 15-16 of 16).

The state appellate court resolved Mr. Rosado's challenge to the sufficiency of the evidence pursuant to a state law standard that is substantially identical to the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979).[2]  Accordingly, the AEDPA deferential standard of review applies.  *See Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005) (if the state appellate court rejected the petitioner's claim under "a standard that is equally or more favorable to him relative to the federal standard, the state court's decision constitutes an adjudication of the federal claim despite citing no federal decisions.").

Under *Jackson*, evidence is sufficient to support a conviction as a matter of due process if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* at 319 (emphasis in the original).  The court looks at both direct and circumstantial evidence in determining the sufficiency of the evidence.  *See Lucero v. Kerby,*

---

[2]Doc. # 10-4, at p.15 of 16.

133 F.3d 1299, 1312 (10th Cir. 1998). The court "may not weigh conflicting evidence nor consider the credibility of witnesses," but must "'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'" *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996) (quoting *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993)).

In applying *Jackson*, the court looks to state law to determine the substantive elements of the offense. 443 U.S. at 324 n.16; *Valdez v. Bravo*, 373 F.3d 1093, 1097 (10th Cir. 2004). Under Colorado law, an actor is guilty of menacing if "by any threat of physical action, he or she knowingly places or attempts to place another person in fear of imminent serious bodily injury." Colo. Rev. Stat. ("C.R.S.") § 18-3-206(1) (2011). Menacing is a class 5 felony if "committed [b]y the use of a deadly weapon." § 18-3-206(1)(a), C.R.S. (2011).

A state appellate court's interpretation of a state statute is a matter of state law binding on the federal district court in habeas proceedings. *See Missouri v. Hunter*, 459 U.S. 359, 368 (1983); *Smith v. Dinwiddie*, 510 F.3d 1180, 1190 (10th Cir. 2007). In Colorado, felony menacing is a general intent crime, *People v. Crump*, 769 P.2d 496 (Colo. 1989), and requires only that the defendant be aware that his or her conduct is practically certain to cause the result. § 18-1-501(6), C.R.S. (2011); *People v. Zieg*, 841 P.2d 342 (Colo. App. 1992). The defendant's subjective awareness may be inferred from his conduct and the surrounding circumstances. *People v. District Court*, 652 P.2d 582 (Colo. 1982). What the victim saw or heard, and how the victim reacted, are relevant considerations in determining whether defendant had the requisite intent to place the victim in fear. *People v. Gagnon,* 703 P.2d 661 (Colo. App.1985). It is not necessary to show that the victim subjectively feared imminent serious bodily injury. *See People v. District Court*, 926 P.2d 567, 571 (Colo. 1996).

The state court's factual findings with regard to the elements of menacing are presumed correct and are supported by the state court record. (State Court R. 7/12/06 Trial Tr.; 7/13/06 Trial Tr., at pp. 13-17).  There was sufficient direct and indirect evidence that Mr. Rosado placed C.Z. in fear of serious bodily injury to support the jury's verdict.  Mr. Rosado has not pointed to any clear and convincing evidence to show that C.Z. was not afraid of the robbers.  As such, the Colorado Court of Appeals' resolution of Mr. Rosado's claim challenging the sufficiency of the evidence to support his felony menacing conviction against C.Z. comported with controlling Supreme Court law.  Mr. Rosado is not entitled to federal habeas relief for his third claim.

D.  Claim Four

Finally, Mr. Rosado maintains that trial counsel was ineffective in failing to investigate the co-defendants' plea agreements and in failing to request a continuance once that information was provided to counsel on the first day of trial.  The court has previously set forth the facts concerning the production of the plea agreements to defense counsel in Section V.A., *supra.*

In the state post-conviction proceeding, Mr. Rosado argued that his counsel was professionally incompetent for failing to adequately investigate the co-defendants and that he was prejudiced because the investigation was necessary to prepare an adequate defense. (Docket No. 10-7, at pp. 6-7 of 10).  On appeal of the trial court's order denying post-conviction relief, the Colorado Court of Appeals rejected the claim on the following grounds:

> We need not decide whether defense counsel met an acceptable level of professional conduct by failing to more thoroughly investigate the agreements because we conclude from the record that Rosado was not sufficiently prejudiced to prevail on his ineffective assistance of counsel claim.

18

First, counsel had adequate time to read the plea agreements Rosado's co-defendants signed.  The agreements were straightforward and brief.  Each agreement is only three pages long, and consists mostly of boilerplate text repeated verbatim in each agreement.  The agreements are not complex, and can be read easily in a few minutes.  Even if defense counsel was unaware of these agreements prior to trial, the trial court's order to delay the testimony of the co-defendants until six to seven days after the start of trial, a period including a weekend during which no proceedings were held, gave him ample time to read them.  Counsel was able to conduct enough investigation to incorporate the plea agreements into his defense.

Second, defense counsel's cross examination of the three co-defendants clearly revealed that he had conducted a sufficient general investigation of them and knew quite a bit about their backgrounds. . . . Given this cross examination, it is clear from the record that even if defense counsel could have more thoroughly investigated the agreements, he nonetheless was able to use them to impeach co-defendants' testimony.  We fail to see, and Rosado does not allege, what more defense counsel could have done with the agreements.  Thus we hold that there was no reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

(Doc. # 10-7, at pp. 7-9 of 10) (internal quotation marks and citation omitted).

To prevail on his claims of ineffective assistance of counsel, Mr. Rosado must show that: (1) counsel's legal representation fell below an objective standard of reasonableness; and (2) "the deficient performance prejudiced the defense."  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  Judicial scrutiny of counsel's performance is highly deferential.  *Id.* at 689. Counsel's decisions are presumed to represent "sound trial strategy; . . . [f]or counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999) (internal quotations omitted).  Under the AEDPA standard of review,  "the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 131 S.Ct. at 788.

The state appellate court correctly applied the *Strickland* standard and determined that Applicant was not prejudiced by any deficiencies in counsel's performance.  Again, the state court's findings are presumed correct and are supported by the state trial court record.  Mr. Rosado does not explain how counsel's cross examination would have been expanded if counsel had obtained copies of the co-defendants' plea agreements sooner.  As the state appellate court observed, and as discussed in Section V.A., *supra*, counsel cross examined each co-defendant thoroughly about the terms of his plea agreement.   In addition, defense counsel cross-examined one co-defendant about his immigration status and pending removal from the country, his failure to cooperate with law enforcement authorities initially, and his marijuana use at the time of the robbery.  (*See generally* State Court R. 7/17/06 Trial Tr., at pp. 27-86).  Counsel cross-examined a second co-defendant about his flight from Colorado to Florida after the robbery and his efforts to contest extradition to Colorado after a Colorado arrest warrant was issued for the robbery.  (State Court R. 7/17/06, at pp. 118-124).  Finally, defense counsel cross-examined the third co-defendant about a previous plea agreement he had entered into with law enforcement authorities for a drug-related offense, a prior pending felony case involving multiple charges of theft and forgery that was dismissed as part of his plea agreement in the robbery case, and inconsistencies in his statements to the police and a probation officer about the robberies.  (*See generally* State Court R. 7/18/06 Trial Tr., at pp. 20-64).

The state court record reflects that defense counsel conducted a thorough examination of the co-defendants to impeach their credibility and to expose the witnesses' motivation for testifying as witnesses for the prosecution.  Mr. Rosado fails to articulate what else, if anything, counsel could have questioned the co-defendants about that would have

gained him an acquittal at trial.  Mr. Rosado therefore is not entitled to federal habeas relief for his fourth claim.

### E.  Request for Evidentiary Hearing

Mr. Rosado requests an evidentiary hearing on his claims.  (Doc. # 29, at p. 13 of 14).  However, because the state court record conclusively demonstrates that he is not entitled to habeas relief, an evidentiary hearing is not warranted.  *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.");  *Anderson v. Attorney General of Kansas,* 425 F.3d 853, 859 (10th Cir. 2005).

Accordingly, IT IS RECOMMENDED that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 filed on October 27, 2011 (Doc. # 1) be DENIED and that this civil action be DISMISSED with prejudice.

### Advisement to the Parties

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir.1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for de novo review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057,

1060 (10th Cir.1996). Failure to make timely objections may bar de novo review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579–80 (10th Cir.1999) (District Court's decision to review a Magistrate Judge's recommendation de novo despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir.1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir.1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales–Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir.2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 3rd day of July, 2012 in Denver, Colorado.

BY THE COURT:


_____s/Craig B. Shaffer_____
United States Magistrate Judge